# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MI FAMILIA VOTA EDUCATION FUND, )
as an organization; MURAT LIMAGE; )
PAMELA GOMEZ, )
                        )
         Plaintiffs. )
                        )
         v. )
                        )
KEN DETZNER, in his official )
capacity as Florida Secretary of State, )
                        )
         Defendant. )
_____ )

CIVIL ACTION

FILE NO. _____

**Three Judge Court Requested**

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF AND REQUEST FOR THREE JUDGE PANEL

1.     This is an action to enforce rights guaranteed to Murat Limage, Pamela Gomez, and Mi Familia Vota Education Fund ("MFVEF") (together with Murat Limage and Pamela Gomez, "Plaintiffs") by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. Defendant Ken Detzner, in his official capacity as Florida Secretary of State, has failed to obtain Section 5 preclearance before implementing, and causing to be implemented, certain changes in standards, practices, and procedures in Florida affecting voting in the five covered counties. Specifically, Defendant has put new procedures into effect for conducting voter registration list maintenance activities, including but not limited to, matching the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") database with the Florida Voter Registration System ("FVRS") database, forwarding a list of "potential non-citizens" to Supervisors of Elections, and requiring Supervisors of Elections to initiate the process of removing registered voters from the voting rolls. The Plaintiffs seek declaratory and injunctive relief prohibiting the

Defendant from continuing to implement the new voter purge procedures unless and until Section 5 preclearance has been obtained from the United States District Court for the District of Columbia or the United States Attorney General.

## PRELIMINARY STATEMENT

2.     This action challenges the new voter purge procedures being enforced by the Defendant Secretary of State and seeks declaratory and injunctive relief pursuant to Fed. R. Civ. P. 65 to halt the continued use of the uncleared voter purge procedures, and to require that Defendant undertake appropriate remedial measures to restore the legally enforceable *status quo ante*.

3.     Under the new voter purge procedures, Defendant claims to have generated a list of thousands of registered voters whose records in the DHSMV database indicate potential non-citizenship status. Without first obtaining the required Section 5 preclearance, Defendant has directed all Florida county Supervisors of Elections to institute voter registration list maintenance activities, including the removal and/or denial of the right to vote to individuals who fail to respond to the required mailings.

4.     Defendant is proceeding to implement the new voter purge procedures notwithstanding: 1) widely-reported information showing that the targeting procedure is highly inaccurate; 2) strong opposition from numerous Florida county Supervisors of Elections; and 3) formal notice by the United States Department of Justice that Defendant's implementation of the procedures appear to violate Section 5 of the Voting Rights Act.

5.     Plaintiffs have no plain, speedy, or adequate remedy at law other than the relief requested in this Complaint. Unless enjoined by this Court, Defendant will continue to illegally

2

enforce the new voter purge procedures against registered voters within the five Florida counties subject to the Section 5 preclearance requirement.

## REQUEST FOR THREE JUDGE PANEL

6.      Pursuant to 42 U.S.C. § 1973(a), "[a]ny action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of title 28 of the United States Code and any appeal shall lie to the Supreme Court." Plaintiffs, by their counsel, therefore, request the Court to notify the Chief Judge of the Eleventh Circuit Court of Appeals that Plaintiffs' claim that Defendants have failed to comply with the preclearance provisions of Section 5 of the Voting Rights Act is required to be heard by a district court of three judges pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c.


## JURISDICTION

7.      This civil action is authorized under 28 U.S.C. § 1343, *see Allen v. State Bd. Elections*, 393 U.S. 544 (1969), and by 42 U.S.C. § 1983, to redress the deprivation under color of state statute, ordinance, regulation, custom, or usage of rights, privileges, or immunities secured to Plaintiffs by the Constitution and laws of the United States. This action is also authorized by 42 U.S.C. § 1973j to secure equitable and other relief under an act of Congress providing for the protection of civil rights.

8.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4), and 42 U.S.C. § 1973j(f). This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.      Jurisdiction for Plaintiffs' claim for attorneys' fees is based on 42 U.S.C. §§ 1973l(e) and 1988.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

US_ACTIVE:\44021309\7\99995.3430

## PARTIES

11.     Plaintiff MURAT LIMAGE is a resident of Hillsborough County, Florida.  Mr. Limage is a citizen of the United States of America and a qualified and legally registered Florida voter.  Mr. Limage is of Haitian descent.

12.     Plaintiff PAMELA GOMEZ is a resident of Hillsborough County, Florida.  Ms. Gomez is a citizen of the United States of America and a qualified and legally registered Florida voter.  Ms. Gomez is of Hispanic, specifically, Dominican descent.

13.     Plaintiff MI FAMILIA VOTA EDUCATION FUND is a national non-profit organization dedicated to working with the Latino community to increase civic participation. MFVEF maintains a Florida office at 615 Herndon Avenue, Suite F, Orlando, Florida 32803.  A core component of MFVEF's mission is to increase voter registration and voting by eligible Latino citizens.  To achieve this goal, MFVEF registers voters and engages in voter education campaigns via television, radio and print media announcements, distribution of voter-registration literature, and voter mobilization efforts.  The Secretary of State's new voter registration procedures will frustrate MFVEF's mission by interfering with its efforts to register eligible voters and increase civic engagement in the Latino community.  Further, it will force MFVEF to divert resources from its regular activities to educate and assist voters in complying with the new purge procedures.

14.     The rights this suit seeks to vindicate are germane to the purposes of the organizational plaintiff, and the claims alleged herein do not require the participation of its individual clients in the lawsuit.  Indeed, without the relief requested herein, the organization

4

will be harmed by the substantial diversion of its resources and the frustration of its organizational purposes.

15. Defendant KEN DETZNER ("Defendant" or "Secretary of State") is the Secretary of State of Florida and is sued in his official capacity. Pursuant to Fla. Stat. § 92.012, the Secretary of State is the chief election officer of Florida, and as such, is responsible for the administration of state laws affecting voting, and for assuring that elections in the State are conducted in accordance with the law. The Secretary of State is required to provide written direction and opinions to the Supervisors of Elections on the performance of their official duties. Defendant Detzner is the state official responsible for seeking preclearance under Section 5 of the Voting Rights Act of any changes affecting voting practices or procedures enacted by the state legislature. The Defendant's principal office is in Tallahassee, Florida.

## STATEMENT OF FACTS AND LAW

### A.   The Defendant Implemented List Maintenance Procedures Based Upon Database Matching to Attempt to Purge Eligible Registered Voters Without Preclearance

16. The State of Florida requires that, in order to vote in any election conducted in that state, an individual must be a citizen of the United States of America. *See* Fla. Stat. § 97.041.

17. The State of Florida assigns responsibility to its county Supervisors of Elections to ensure that any eligible applicant for voter registration is registered to vote. *See* Fla. Stat. § 98.045(1). Supervisors of Elections must conduct uniform, non-discriminatory registration list maintenance. *See* Fla. Stat. § 98.065. The Department of State must ensure the maintenance of accurate and current voter registration records. *See* Fla. Stat. § 98.075.

18. Prior to 2010, individuals in Florida were permitted to apply for a driver's license without providing proof of citizenship but were required to advise the DHSMV whether they had

citizenship at the time of application. This information was included in the drivers' license database maintained by the DHSMV.

19.   Beginning on or about January 1, 2010, the DHSMV began to require individuals applying for a new or renewed driver's license or state photo identification card to provide documentary proof of identity and lawful status in the United States. The cycle for all renewals will not be completed until December 1, 2017. At that point, DHSMV records should be updated with supporting documentation of legal status.

20.   Upon information and belief, Florida has never attempted to update the records of the DHSMV to reflect individuals who have become naturalized United States citizens after obtaining a Florida drivers' license. Citizenship status is only updated in the DHSMV's database at the time of driver's license renewals.

21.   Prior to April 2, 2012, the State of Florida had no legally enforceable procedure for systematically instituting voter registration list maintenance procedures against individual registered voters based upon citizenship information maintained by the DHSMV.

22.   Upon information and belief, on or before April 2011, the Florida Division of Elections began to produce lists of Florida registered voters that it classified as suspected non-citizens based upon administrative records matching between the FVRS database and the DHSMV database.

23.   On or about April 2, 2012, the Florida Secretary of State and the Florida Division of Elections notified all county Supervisors of Elections via email entitled "List Maintenance Information and webinar" that they would be receiving lists of potential non-citizens in an Excel spreadsheet on CD via FedEx, and that "a webinar is being created to assist you with processing these files, and to inform you of the process of vetting the files."

US_ACTIVE:\44021309\7\99995.3430

24.    In an April 2012 webinar, the Secretary of State directed the county Supervisors

of Elections to conduct the following actions:

> **Initiate notice (within 7 days).**  Send notice by certified mail, return
> receipt requested or by some other means of verified delivery).  Notice
> must include: A statement of **basis for ineligibility**; [a] copy of any
> **supporting documentation**, *Print out the latest screen shot from the
> DHSMV DAVE containing legal status. This is what DHSMV has last
> recorded.  Redact confidential/personal identifying information such as
> DL, state ID #, SSN, and signature*; [a] statement that **failure to respond**
> within 30 days *may* result in removal from rolls; [a] **return form** that
> requires voter to admit or deny accuracy of information; [a] statement that
> a person denying ineligibility has a **right to a hearing**; [c]ontact
> information for Supervisor of Elections; [i]nstructions for seeking
> restoration of civil rights (Not applicable in these cases).

(Emphasis in original).

25.    In an April 2012 webinar, the Secretary of State provided the county Supervisors

of Elections with a "Suggested Sample Notice to Send Potentially Ineligible Non-U.S. Citizen."

The sample notice stated, in part, that "[i]f you fail to respond within thirty (30) days, we *may*

determine that you are ineligible and remove your name from the voter registration rolls.  You

will then no longer be eligible [sic] to vote." (emphasis added).

26.    In an April 2012 webinar, the Secretary of State directed the county Supervisors

of Elections to: "**Allow voter 30 days to respond** (if you receive verification that mail

delivered); **[p]ublish notice** ONLY if notice undeliverable (Section 98.075(7)(a)2.a.-e, Fla.

Stat.); **[p]rovide hearing** ONLY if person denies ineligibility AND person requests hearing."

(emphasis in original).

27.    In an April 2012 webinar, the Secretary of State provided the county Supervisors

of Elections with "Pointers."  These pointers advised that "[i]t is strongly encouraged but not

required (for continuing registration purposes) that a registered voter who is determined to be a

U.S. citizen to contact DHSMV to correct or update his or her legal status on record."

28.     In an April 2012 webinar for the county Supervisors of Elections, the Secretary of State provided further "Pointers." These pointers directed that:

> If you determine that a registered voter initially identified as not a U.S. citizen has subsequently become a U.S. citizen, this person shall be deemed eligible for purposes of continuing registration and should not be removed from the rolls. HOWEVER, the matter should be referred to the State Attorney. See Section 104.011 (false swearing of an application) and Section 104.42, F.S. ('duty to report fraudulent registration and illegal voting').

29.     On May 9, 2012, the Secretary of State issued a press release announcing that the Florida Division of Elections had compared the FVRA database and the DHSMV database to identify potential non-citizens. This press release announced that the Secretary of State had sent the names of more than 2,600 potential non-citizens to Florida's 67 county Supervisors of Elections for "review and, if warranted, removal from the voter rolls."

30.     The Secretary of State has neither provided nor required uniform statewide procedures to be applied by county Supervisors of Elections in evaluating whether individuals whose names appear on the aforementioned Excel spreadsheets are United States citizens. Further, the Secretary of State has not specified the documentation that may be produced by such an individual in order to prove citizenship. Instead, the Secretary of State merely advised all county Supervisors of Elections of different documents that *may* be acceptable proof of citizenship.

31.     Several counties in the State, including Hillsborough County, used the state-generated report as the basis for a mailing to demand that the recipients provide proof of their citizenship. *See* Fla. Stat. § 98.075(7). The mailing notified the voter that if he or she failed to respond within 30 days, the voter may or will be removed from the voting list.

US_ACTIVE:\44021309\7\99995.3430

32.     Upon information and belief, a disproportionate share of the individuals against whom the Secretary of State has directed purge procedures to be instituted on the basis of the aforementioned list are racial and language minorities.

33.     Upon information and belief, the Secretary of State is aware that the aforementioned list is erroneously targeting large numbers of voters, because hundreds of the affected individuals already have established that they are United States citizens and lawfully registered voters.

34.     On or about May 31, 2012, the United States Department of Justice, Civil Rights Division, sent a letter to the Secretary of State advising that Defendant implemented and enforced the new voter purge procedures without Section 5 preclearance.  Specifically, the Department of Justice's letter informed the Secretary of State that the matching procedures implemented to verify the eligibility of registered voters, and the subsequent notification and possible removal of registered voters from the voter rolls, is a change affecting voting in the five Florida counties that are subject to Section 5 of the Voting Rights, and that such change was not submitted to the United States District Court for the District of Columbia for judicial review or to the Attorney General for administrative review as required by Section 5 of the Voting Rights Act.  A copy of the May 31, 2012 letter is attached hereto as Exhibit "A."

35.     On June 6, 2012, the Secretary of State responded to the Department of Justice's letter, disagreeing with the Department of Justice's position and asserting that the new voter purge procedures are consistent with federal law, including the Voting Rights Act.

36.     On June 1, 2012, the ACLU Foundation of Florida, Inc., the ACLU Voting Rights Project, and the Lawyers' Committee for Civil Rights Under Law sent Defendant a notice letter on behalf of Plaintiffs advising the Secretary of State and the Florida Division of Elections that

US_ACTIVE:\44021309\7\99995.3430

the new voter purge procedures are being conducted in violation of Section 5 of the Voting

Rights Act and the National Voter Registration Act.  The letter also provided the statutory notice

of a violation of the NVRA, allowing the Plaintiffs to file suit under the NVRA at the conclusion

of the 20-day waiting period.

      37.     To date, the Defendant has not responded to Plaintiffs' June 1, 2012 letter.

**B.    The State of Florida Violated the Preclearance Requirements of Section 5 of the Voting Rights Act**

      38.     Section 5 of the Voting Rights Act of 1965, 42 U.S.C. §1973c, is a temporary

provision that prohibits changes in election practices or procedures in states and political

subdivisions with a documented history of discriminatory voting practices until the new

procedures have been determined, either by a declaratory judgment of the United States District

Court for the District of Columbia or by the absence of an objection by the United States

Attorney General, not to have the purpose or effect of denying or abridging the right to vote on

account of race, color, or membership in a language minority group. This process is referred to

as Section 5 "preclearance."

      39.     The Florida counties of Collier, Hardee, Hendry, Hillsborough, and Monroe are

currently covered under Section 4(b) of the Voting Rights Act, and Section 5 preclearance is

required prior to implementing any changes to election practices or procedures affecting those

counties.

      40.     The actions of the Secretary of State in instituting voter registration list

maintenance procedures based upon motor vehicles data matching constitute changes affecting

voting that require Section 5 preclearance. At the time this purge program was instituted in April

2012, it was a new, systematic process that placed currently registered voters at risk of being

removed from the voter registration rolls, and was intended to result in currently registered

voters being removed from the voter registration rolls. No practice or procedure requiring voter purging on the basis of motor vehicles data matching was in effect in Florida on November 1, 1972, nor has Florida obtained Section 5 preclearance since that date to conduct voter purging on the basis of motor vehicles data matching.

41.     These actions, which involve the generation and distribution of reports to county Supervisors of Elections as the basis for voter challenges, hearings, correspondence and/or removal, constitute voting changes which require Section 5 preclearance before they lawfully can be implemented in Collier, Hardee, Hendry, Hillsborough, or Monroe County.

42.     All of these voting changes were implemented by the Defendant without having first obtained Section 5 preclearance.

**C.     Plaintiff Murat Limage's Voting Rights Have Been Violated**

43.     Plaintiff Murat Limage is a United States citizen, a lawfully registered voter, and a resident of Hillsborough County, Florida.

44.     Mr. Limage received a driver's license from the Florida DHSMV in 1999 and last updated his driver's license November 6, 2008. Mr. Limage naturalized as a United States citizen on October 19, 2010 and registered to vote on November 1, 2010. Mr. Limage changed his address in or around November of 2011 and contacted the Hillsborough county Supervisor of Elections office to update their voter registration records to reflect his new address. Mr. Limage subsequently received a voter registration card at his new address.

45.     Mr. Limage received a letter from the Supervisor of Elections of Hillsborough County, dated April 13, 2012, indicating that they were "notified that [Mr. Limage] may not be a US Citizen" and requiring documentation evidencing his citizenship. The letter further advised that the "failure to submit the [citizenship information] within (30) days may result in the

US_ACTIVE:\44021309\7\99995.3430

removal of [Mr. Limage's] name from the voter registration rolls" and he would no longer be eligible to vote.

46.     Mr. Limage was required to prove his citizenship by providing either a copy of his driver's license, passport, birth certificate, or other document verifying that he was a United States citizen.   Accordingly, Mr. Limage drove to the Hillsborough County Elections and Registration Office in order to prove his citizenship.

47.     Mr. Limage presented his United States passport to a Supervisor of Elections office official.   The official photocopied his passport and told him that he would not receive written confirmation that he had provided proof of citizenship, but that he was not required to take any further action.  Mr. Limage to date has received no official documentation of the fact that he corrected his designation as a non-citizen.  Mr. Limage remains concerned that he will not be permitted to vote in the upcoming election.

**D.    Plaintiff Pamela Gomez's Voting Rights Have Been Violated**

48.     Plaintiff Pamela Gomez is a United States citizen, a lawfully registered voter, and a resident of Hillsborough County, Florida.  She has been a resident of Florida since July 2005.

49.     Ms. Gomez received a driver's license from the Florida DHSMV February 20, 2006 and has not since been required to renew her driver's license.  She naturalized as a United States citizen in February 2011 and registered to vote that same day.

50.     Ms. Gomez has yet to receive a letter from the Supervisor of Elections requesting proof of her citizenship but expects that her voter eligibility may be challenged because her DHSMV records may not currently reflect her United States citizenship.

US_ACTIVE:\44021309\7\99995.3430

**E.      MFVEF's Rights Have Been Violated**

51.      Plaintiff MFVEF is a national non-profit organization dedicated to working with the Latino community in Florida and across the nation to increase civic participation.

52.      MFVEF engages in voter registration activities, voter education campaigns via television, radio and print media announcements, distribution of voter-registration literature, and voter mobilization efforts which include transportation to the voting polls. From March 1, 2012 to June 5, 2012, MFVEF has registered 6,318 voters in Florida.  Of that number, 3,294 are registered in Hillsborough County.

53.      The Defendant's new voter purge procedures will frustrate MFVEF's organizational mission by interfering with its efforts to register eligible voters particularly among newly-naturalized citizens and diverting its limited resources to assisting voters in complying with the new purge procedures.

## CLAIM FOR RELIEF

### CLAIM ONE
### (Section 5 of the Voting Rights Act of 1965)

54.      Plaintiffs hereby incorporate by reference paragraphs 1 through 53 as if fully set forth herein.

55.      Defendant has failed to secure Section 5 preclearance for the new voter purge procedures identified in Paragraphs 22-31 above, as required by Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, in Collier, Hardee, Hendry, Hillsborough and Monroe Counties.

56.      Any removal of registered voters, threatened removal of registered voters, or other implementation of the new voter purge procedures identified in Paragraphs 22-31 above, without Section 5 preclearance, is void and violates the rights of Plaintiffs as secured by Section

13

5 of the Voting Rights Act. Unless enjoined, Defendant will proceed with the voter removals in violation of Section 5 of the Voting Rights Act.

57. Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendant's implementation of the new voter purge procedures violates Section 5 of the Voting Rights Act, and to an injunction prohibiting the implementation of the new voter purge procedures and restoring the legally enforceable *status quo ante* unless and until Section 5 preclearance has been obtained from the United States Department of Justice or the United States District Court for the District of Columbia.

## REQUEST FOR DECLARATORY RELIEF

58. Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2201, Plaintiffs seek a declaration that Defendant's implementation and use of the new voter purge procedures absent preclearance by the Department of Justice or the United States District Court for the District of Columbia violates the right of Plaintiffs as secured by the Voting Rights Act.

## BASIS FOR EQUITABLE RELIEF

59. Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from Defendant's unlawful practices. Plaintiffs will continue to suffer irreparable injury from Defendant's acts, policies and practices set forth herein unless Defendant is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter Judgment granting Plaintiffs:

A. A declaratory judgment that Defendant's actions violate the rights of Plaintiffs as secured by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

US_ACTIVE:\44021309\7\99995.3430

B.      Injunctive relief enjoining Defendant, his successors in office, agents, employees, attorneys and those persons acting in concert with him or at his direction from using and implementing the new voter purge procedures, and ordering Defendant to employ his full authority to direct all county Supervisors of Elections to cease using the citizenship check feature of the voter registration database as the basis for voter challenges and hearings.

C.      Engage in affirmative, corrective measures, including but not limited to sending letters rescinding its previous correspondence to county Supervisors of Elections relating to the new voter purge procedures and to report immediately to the Court any county that refuses to comply;

D.      An order of this Court retaining jurisdiction over this matter until the Defendant has complied with all the orders and mandates of the Court;

E.      The costs of this suit, including reasonable attorneys' fees; and,

F.      Such other and further relief as the Court may deem just and proper.


DATED: June 8, 2012

                                    Respectfully submitted,


                                    /s/ Edward Soto
                                    WEIL, GOTSHAL & MANGES LLP
                                    Edward Soto
                                    Florida Bar No. 0265144
                                    Edward McCarthy
                                    Florida Bar No. 683701
                                    1395 Brickell Avenue, Suite 1200
                                    Miami, Florida
                                    Tel: (305) 577-3100
                                    Edward.soto@weil.com
                                    Edward.mccarthy@weil.com

US_ACTIVE:\44021309\7\99995.3430

/s/ Robert Kengle
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
Robert Kengle
Dara Lindenbaum
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
(202) 662-8324
Bkengle@Lawyerscommittee.org
DLindenbaum@Lawyerscommittee.org


/s/ Randall C. Marshall
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA, INC.
Randall C. Marshall
Florida Bar No. 181765
Julie Ebenstein
Florida Bar No. 91033
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137-3227
Tel. 786-363-2700
Fax 786-363-1108
rmarshall@aclufl.org
jebenstein@aclufl.org


/s/ M. Laughlin McDonald
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
M. Laughlin McDonald
Katie O'Connor
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303
(404) 523-2721
lmcdonald@aclu.org
koconnor@aclu.org

US_ACTIVE:\44021309\7\99995.3430