UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MI FAMILIA VOTA EDUCATION FUND, as an organization; MURAT LIMAGE; PAMELA GOMEZ, <br><br>Plaintiffs. <br><br>v. <br><br>KEN DETZNER, in his official capacity as Florida Secretary of State, <br><br>Defendant. | CIVIL ACTION <br><br>CASE NO. 8:12-CV-1294-T-27MAP <br><br>**Three Judge Court Requested** |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REQUEST FOR THREE JUDGE PANEL**

1.  This is an action to enforce rights guaranteed to Murat Limage, Pamela Gomez, and Mi Familia Vota Education Fund ("MFVEF") (together with Murat Limage and Pamela Gomez, "Plaintiffs") by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

2.  Defendant Ken Detzner, in his official capacity as Florida Secretary of State, has failed to obtain Section 5 preclearance before implementing, and causing to be implemented, certain changes in standards, practices, and procedures in Florida affecting voting in the five covered counties. Specifically, Defendant has put a series of new procedures into effect for conducting voter registration list maintenance activities, including but not limited to, matching a list generated by the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") database and the Florida Voter Registration System ("FVRS") database with names on the United States Citizenship and Immigration Service's ("USCIS")[1] Systematic Alien Verification

---

[1] USCIS is overseen by the Department of Homeland Security ("DHS"). It was formerly known as the Immigration and Naturalization Service ("INS").

for Entitlements ("SAVE") database, and checking the eligibility of "potential non-citizens" in order to initiate a process which will result in the removal of registered voters and the threatened removal of registered voters from the voting rolls.

3. The Plaintiffs seek declaratory and injunctive relief prohibiting the Defendant from continuing to implement the new voter purge procedures unless and until Section 5 preclearance has been obtained from the United States District Court for the District of Columbia or the United States Attorney General.

## PRELIMINARY STATEMENT

4. This action challenges new voter purge procedures that have been implemented without Section 5 preclearance by the Defendant Secretary of State and seeks declaratory and injunctive relief pursuant to Fed. R. Civ. P. 65 to halt the continued use of the un-precleared voter purge procedures, and to require that Defendant undertake appropriate remedial measures to restore the legally enforceable *status quo ante*.

5. Under the new voter purge procedures, Defendant generated a list of approximately 2,600 registered voters whom Defendant, based upon DHSMV database records, claimed to suspect of being ineligible to vote due to non-citizenship. Without first obtaining the required Section 5 preclearance, Defendant directed all Florida county Supervisors of Elections to institute voter registration list maintenance activities against the registered voters, including the removal and/or denial of the right to vote to individuals who failed to respond to the required mailings. Many, but not all, election supervisors refused to comply with the Defendant's directive due to inaccuracies in the data. Nevertheless, Defendant has informed the State's election supervisors that the new purge procedures are being resumed in a modified form. Upon

information and belief, Defendant will not seek Section 5 preclearance for any of the new purge procedures.

6. Defendant has confirmed that he is proceeding with the new voter purge procedures despite: 1) widely-reported information showing that the targeting procedure is highly inaccurate; 2) strong opposition from numerous Florida county Supervisors of Elections; and 3) formal notice by the United States Department of Justice that Defendant's implementation of the procedures violates Section 5 of the Voting Rights Act.

7. As explained below, Defendant's actions continue to violate the rights of Plaintiffs as secured by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

8. Plaintiffs have no plain, speedy, or adequate remedy at law other than the relief requested in this Complaint. Unless enjoined by this Court, Defendant will continue to illegally enforce the new voter purge procedures against registered voters within the five Florida counties subject to the Section 5 preclearance requirement.

## REQUEST FOR THREE JUDGE PANEL

9. Pursuant to 42 U.S.C. § 1973(a), "[a]ny action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of title 28 of the United States Code and any appeal shall lie to the Supreme Court." Plaintiffs, by their counsel, therefore, request the Court to notify the Chief Judge of the Eleventh Circuit Court of Appeals that Plaintiffs' claim that Defendants have failed to comply with the preclearance provisions of Section 5 of the Voting Rights Act is required to be heard by a district court of three judges pursuant to 28 U.S.C. § 2284 and 42 U.S.C. § 1973c.

## JURISDICTION

10. This civil action is authorized under 28 U.S.C. § 1343, *see Allen v. State Bd. Elections*, 393 U.S. 544 (1969), and by 42 U.S.C. § 1983, to redress the deprivation under color of state statute, ordinance, regulation, custom, or usage of rights, privileges, or immunities secured to Plaintiffs by the Constitution and laws of the United States. This action is also authorized by 42 U.S.C. § 1973j to secure equitable and other relief under an act of Congress providing for the protection of civil rights.

11. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) & (4), and 42 U.S.C. § 1973j(f). This Court has jurisdiction to grant both declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12. Jurisdiction for Plaintiffs' claim for attorneys' fees is based on 42 U.S.C. §§ 1973l(e) and 1988.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

14. Plaintiff MURAT LIMAGE is a resident of Hillsborough County, Florida. Mr. Limage is a citizen of the United States of America and a qualified and legally registered Florida voter. Mr. Limage is of Haitian descent.

15. Plaintiff PAMELA GOMEZ is a resident of Hillsborough County, Florida. Ms. Gomez is a citizen of the United States of America and a qualified and legally registered Florida voter. Ms. Gomez is of Hispanic, specifically, Dominican descent.

16. Plaintiff MI FAMILIA VOTA EDUCATION FUND is a national non-profit organization dedicated to working with the Latino community to increase civic participation. MFVEF maintains a Florida office at 615 Herndon Avenue, Suite F, Orlando, Florida 32803. A

core component of MFVEF's mission is to increase voter registration and voting by eligible Latino citizens. To achieve this goal, MFVEF registers voters and engages in voter education campaigns via television, radio and print media announcements, distribution of voter-registration literature, and voter mobilization efforts. The Secretary of State's new voter registration procedures will frustrate MFVEF's mission by interfering with its efforts to register eligible voters and increase civic engagement in the Latino community. Further, it will force MFVEF to divert resources from its regular activities to educate and assist voters in complying with the new purge procedures.

17. The rights this suit seeks to vindicate are germane to the purposes of the organizational plaintiff, and the claims alleged herein do not require the participation of its individual clients in the lawsuit. Indeed, without the relief requested herein, the organization will be harmed by the substantial diversion of its resources and the frustration of its organizational purposes.

18. Defendant KEN DETZNER ("Defendant" or "Secretary of State") is the Secretary of State of Florida and is sued in his official capacity. Pursuant to Fla. Stat. § 97.012, the Secretary of State is the chief election officer of Florida, and as such, is responsible for the administration of state laws affecting voting, and for assuring that elections in the State are conducted in accordance with the law. The Secretary of State is required to provide written direction and opinions to the Supervisors of Elections on the performance of their official duties. Defendant Detzner is the state official responsible for seeking preclearance under Section 5 of the Voting Rights Act of any changes affecting voting practices or procedures enacted by the state legislature. The Defendant's principal office is in Tallahassee, Florida.

## STATEMENT OF FACTS AND LAW

A.  **The Defendant Implemented New Voter Purge Procedures Based Upon Database Matching Without Preclearance**

19. The State of Florida requires that, in order to vote in any election conducted in that state, an individual must be a citizen of the United States of America. *See* Fla. Stat. § 97.041.

20. The State of Florida assigns responsibility to its county Supervisors of Elections to ensure that any eligible applicant for voter registration is registered to vote. *See* Fla. Stat. § 98.045(1). Supervisors of Elections must conduct uniform, non-discriminatory registration list maintenance. *See* Fla. Stat. § 98.065. The Department of State must ensure the maintenance of accurate and current voter registration records. *See* Fla. Stat. § 98.075.

21. Prior to 2010, individuals in Florida were permitted to apply for a driver's license without providing proof of citizenship but were required to advise the DHSMV whether they had citizenship at the time of application. This information was included in the drivers' license database maintained by the DHSMV.

22. Beginning on or about January 1, 2010, the DHSMV began to require individuals applying for a new or renewed driver's license or state photo identification card to provide documentary proof of identity and lawful status in the United States. The cycle for all renewals will not be completed until December 1, 2017. At that point, DHSMV records should be updated with supporting documentation of legal status.

23. Upon information and belief, Florida has never attempted to update the records of the DHSMV to reflect individuals who have become naturalized United States citizens after obtaining a Florida drivers' license. Citizenship status is only updated in the DHSMV's database at the time of driver's license renewals.

24. Prior to April 2, 2012, the State of Florida had no legally enforceable procedure for systematically instituting voter registration list maintenance procedures against individual registered voters based upon citizenship information maintained by the DHSMV.

25. Upon information and belief, on or before April 2012, the Florida Division of Elections began to produce lists of Florida registered voters that it classified as suspected non-citizens based upon administrative records matching between the FVRS database and the DHSMV database.

26. On or about April 2, 2012, the Florida Secretary of State and the Florida Division of Elections notified all county Supervisors of Elections via email entitled "List Maintenance Information and webinar" that they would be receiving lists of potential non-citizens in an Excel spreadsheet on CD via FedEx, and that "a webinar is being created to assist you with processing these files, and to inform you of the process of vetting the files."

27. In an April 2012 webinar, the Secretary of State directed the county Supervisors of Elections to conduct the following actions:

> **Initiate notice (within 7 days).** Send notice by certified mail, return receipt requested or by some other means of verified delivery). Notice must include: A statement of **basis for ineligibility**; [a] copy of any **supporting documentation,** *Print out the latest screen shot from the DHSMV DAVE containing legal status. This is what DHSMV has last recorded. Redact confidential/personal identifying information such as DL, state ID #, SSN, and signature*; [a] statement that **failure to respond** within 30 days *may* result in removal from rolls; [a] **return form** that requires voter to admit or deny accuracy of information; [a] statement that a person denying ineligibility has a **right to a hearing**; [c]ontact information for Supervisor of Elections; [i]nstructions for seeking restoration of civil rights (Not applicable in these cases).

(Emphasis in original).

28. In an April 2012 webinar, the Secretary of State provided the county Supervisors of Elections with a "Suggested Sample Notice to Send Potentially Ineligible Non-U.S. Citizen."

7

The sample notice stated, in part, that "[i]f you fail to respond within thirty (30) days, we *may* determine that you are ineligible and remove your name from the voter registration rolls. You will then no longer be eligible [sic] to vote." (emphasis added).

29. In an April 2012 webinar, the Secretary of State directed the county Supervisors of Elections to: "**Allow voter 30 days to respond** (if you receive verification that mail delivered); **[p]ublish notice** ONLY if notice undeliverable (Section 98.075(7)(a)2.a.-e, Fla. Stat.); **[p]rovide hearing** ONLY if person denies ineligibility AND person requests hearing." (emphasis in original).

30. In an April 2012 webinar, the Secretary of State provided the county Supervisors of Elections with "Pointers." These pointers advised that "[i]t is strongly encouraged but not required (for continuing registration purposes) that a registered voter who is determined to be a U.S. citizen to contact DHSMV to correct or update his or her legal status on record."

31. In an April 2012 webinar for the county Supervisors of Elections, the Secretary of State provided further "Pointers." These pointers directed that:

> If you determine that a registered voter initially identified as not a U.S. citizen has subsequently become a U.S. citizen, this person shall be deemed eligible for purposes of continuing registration and should not be removed from the rolls. HOWEVER, the matter should be referred to the State Attorney. See Section 104.011 (false swearing of an application) and Section 104.42, F.S. ('duty to report fraudulent registration and illegal voting').

32. On May 9, 2012, the Secretary of State issued a press release announcing that the Florida Division of Elections had compared the FVRA database and the DHSMV database to identify potential non-citizens. This press release announced that the Secretary of State had sent the names of more than 2,600 potential non-citizens to Florida's 67 county Supervisors of Elections for "review and, if warranted, removal from the voter rolls."

33. The Secretary of State neither provided nor required uniform statewide procedures to be applied by county Supervisors of Elections in evaluating whether individuals whose names appeared on the aforementioned Excel spreadsheets were United States citizens. Further, the Secretary of State did not specify the documentation that could be produced by such an individual in order to prove citizenship. Instead, the Secretary of State merely advised all county Supervisors of Elections of different documents that *may* be acceptable proof of citizenship.

34. Several counties in the State, including Hillsborough County, used the April 2012 state-generated report as the basis for a mailing to demand that the recipients provide proof of their citizenship. *See* Fla. Stat. § 98.075(7). The mailing notified the voter that if he or she failed to respond within 30 days, the voter might or would be removed from the voting list.

35. Upon information and belief, a disproportionate share of the individuals against whom the Secretary of State directed purge procedures to be instituted on the basis of the April 2012 list are racial and language minorities.

36. Upon information and belief, the Secretary of State is aware that the April 2012 list erroneously targeted large numbers of voters, because hundreds of the affected individuals established that they are United States citizens and lawfully registered voters.

37. On or about May 31, 2012, the United States Department of Justice, Civil Rights Division, sent a letter to the Secretary of State advising that Defendant implemented and enforced the new voter purge procedures without Section 5 preclearance. Specifically, the Department of Justice's letter informed the Secretary of State that the matching procedures implemented to verify the eligibility of registered voters, and the subsequent notification and possible removal of registered voters from the voter rolls, is a change affecting voting in the five

Florida counties that are subject to Section 5 of the Voting Rights, and that such change was not submitted to the United States District Court for the District of Columbia for judicial review or to the Attorney General for administrative review as required by Section 5 of the Voting Rights Act. A copy of the May 31, 2012 letter is attached hereto as Exhibit "A."

38. On June 6, 2012, the Secretary of State responded to the Department of Justice's letter, disagreeing with the Department of Justice's position and asserting that the new voter purge procedures are consistent with federal law, including the Voting Rights Act.

39. Upon information and belief, as of late June 2012, the county Supervisors of Elections notified Defendant that they would no longer be using the April 2012 list to purge voters from the voting rolls, largely due to the list's inaccuracies. However, in Collier County, voters were removed from the voting rolls based on the Secretary of State's list as recently as June 26, 2012.

40. Subsequently, in a hearing on June 27, 2012, in the United States' NVRA lawsuit currently pending in the United States District Court for the Northern District of Florida,[2] the State took the position that Florida had temporarily ceased purging voters based solely on the flawed April 2012 DHSMV data. At that hearing, the State of Florida represented to Judge Hinkle that if it was granted access to the United States Customs and Immigration Service ("USCIS") "SAVE" system, it would resume the process of purging voters based upon the DHSMV data in combination with the SAVE data.

41. The SAVE system (Systematic Alien Verification for Entitlements Program) is an intergovernmental initiative designed to help federal, state, tribal, and local government agencies verify the lawful presence of applicants when granting benefits, licenses and other lawful

---

[2] *See The United States of America v. State of Florida, Ken Detzner*, Case No. 4:12-cv-285-RH-CAS (N.D. Fla.).

purposes. The program provides an online facility for subscribers to verify the lawful presence of individuals based upon certain identifying information.

42. On June 11, 2012, the State of Florida brought suit against the Department of Homeland Security ("DHS"), seeking declaratory and injunctive relief under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which provides that DHS/USCIS "shall respond to any inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c). The State alleged that between early 2011 and June 2012, the State of Florida, through Defendant, had unsuccessfully petitioned DHS for access to the SAVE system. Florida claimed that it was entitled to SAVE system access as a matter of federal law, and that DHS was violating the State's rights in not providing access. Florida's complaint requested that the State's entire voter registration database be analyzed through the SAVE system.

43. In a letter dated July 9, 2012, DHS informed Florida that it would provide access to the SAVE database on the same basis as other States. This will involve individual queries including the "A-number", which is a USCIS-specific identifier.

44. Upon information and belief, DHS requires states to provide an alien registration or admission number before it can verify citizenship in the SAVE database.

45. Upon information and belief, Defendant is continuing the voter purge procedure by cross-referencing the same faulty list it generated with the DHSMV database with the new information it received access to in the SAVE database in order to remove potential ineligible voters from the voter rolls.

11

46.     Plaintiffs have suffered harm and have an imminent threat of continued harm because the State is continuing voter registration list maintenance activities under procedures that have not received Section 5 preclearance, and because Defendant will continue to implement such procedures without Section 5 preclearance unless restrained by this Court.

**B.     The State of Florida Violated the Preclearance Requirements of Section 5 of the Voting Rights Act**

47.     Section 5 of the Voting Rights Act of 1965, 42 U.S.C. §1973c, is a temporary provision that prohibits changes in election practices or procedures in states and political subdivisions with a documented history of discriminatory voting practices until the new procedures have been determined, either by a declaratory judgment of the United States District Court for the District of Columbia or by the absence of an objection by the United States Attorney General, not to have the purpose or effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. This process is referred to as Section 5 "preclearance."

48.     The Florida counties of Collier, Hardee, Hendry, Hillsborough, and Monroe are currently covered under Section 4(b) of the Voting Rights Act, and Section 5 preclearance is required prior to implementing any changes to election practices or procedures affecting those counties.

49.     The actions of the Secretary of State in instituting voter registration list maintenance procedures based upon motor vehicles data matching and SAVE database matching constitute changes affecting voting that require Section 5 preclearance. At the time these purge programs were instituted, in April 2012 and in July 2012, respectively, they were new, systematic processes that placed currently registered voters at risk of being removed from the voter registration rolls, and were intended to result in currently registered voters being removed

from the voter registration rolls. No practice or procedure requiring voter purging on the basis of motor vehicles data matching was in effect in Florida on November 1, 1972, nor has Florida obtained Section 5 preclearance since that date to conduct voter purging on the basis of motor vehicles data matching.

50. These actions, which form the basis for voter challenges, hearings, correspondence and/or removal, constitute voting changes which require Section 5 preclearance before they lawfully can be implemented in Collier, Hardee, Hendry, Hillsborough, or Monroe County.

51. All of these voting changes were implemented by the Defendant without having first obtained Section 5 preclearance.

### C. Plaintiff Murat Limage's Voting Rights Have Been Violated

52. Plaintiff Murat Limage is a United States citizen, a lawfully registered voter, and a resident of Hillsborough County, Florida.

53. Mr. Limage received a driver's license from the Florida DHSMV in 1999 and last updated his driver's license November 6, 2008. Mr. Limage naturalized as a United States citizen on October 19, 2010 and registered to vote on November 1, 2010. Mr. Limage changed his address in or around November of 2011 and contacted the Hillsborough county Supervisor of Elections office to update their voter registration records to reflect his new address. Mr. Limage subsequently received a voter registration card at his new address.

54. Mr. Limage received a letter from the Supervisor of Elections of Hillsborough County, dated April 13, 2012, indicating that they were "notified that [Mr. Limage] may not be a US Citizen" and requiring documentation evidencing his citizenship. The letter further advised that the "failure to submit the [citizenship information] within (30) days may result in the

removal of [Mr. Limage's] name from the voter registration rolls" and he would no longer be eligible to vote.

55. Mr. Limage was required to prove his citizenship by providing either a copy of his driver's license, passport, birth certificate, or other document verifying that he was a United States citizen. Accordingly, Mr. Limage drove to the Hillsborough County Elections and Registration Office in order to prove his citizenship.

56. Mr. Limage presented his United States passport to a Supervisor of Elections office official. The official photocopied his passport and told him that he would not receive written confirmation that he had provided proof of citizenship, but that he was not required to take any further action. Mr. Limage remains concerned that he will not be permitted to vote in the upcoming election.

**D.   Plaintiff Pamela Gomez's Voting Rights Have Been Violated**

57. Plaintiff Pamela Gomez is a United States citizen, a lawfully registered voter, and a resident of Hillsborough County, Florida. She has been a resident of Florida since July 2005.

58. Ms. Gomez received a driver's license from the Florida DHSMV February 20, 2006 and has not since been required to renew her driver's license. She naturalized as a United States citizen in February 2011 and registered to vote that same day.

59. Ms. Gomez has yet to receive a letter from the Supervisor of Elections requesting proof of her citizenship but expects that her voter eligibility may be challenged because her DHSMV records may not currently reflect her United States citizenship.

**E.   MFVEF's Rights Have Been Violated**

58. Plaintiff MFVEF is a national non-profit organization dedicated to working with the Latino community in Florida and across the nation to increase civic participation.

59. MFVEF engages in voter registration activities, voter education campaigns via television, radio and print media announcements, distribution of voter-registration literature, and voter mobilization efforts which include transportation to the voting polls. From March 1, 2012 to June 5, 2012, MFVEF has registered 14,875 voters in Florida. Of that number, 6,596 are registered in Hillsborough County.

60. The Defendant's new voter purge procedures will frustrate MFVEF's organizational mission by interfering with its efforts to register eligible voters particularly among newly-naturalized citizens and diverting its limited resources to assisting voters in complying with the new purge procedures.

## **CLAIM FOR RELIEF**

### **CLAIM ONE**
### (Section 5 of the Voting Rights Act of 1965)

61. Plaintiffs hereby incorporate by reference paragraphs 1 through 60 as if fully set forth herein.

62. Defendant has failed to secure Section 5 preclearance for the new voter purge procedures identified in Paragraphs 18-51 above, as required by Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, in Collier, Hardee, Hendry, Hillsborough and Monroe Counties.

63. Any removal of registered voters, threatened removal of registered voters, or other implementation of the new voter purge procedures identified in Paragraphs 18-51 above, without Section 5 preclearance, is void and violates the rights of Plaintiffs as secured by Section 5 of the Voting Rights Act. Unless enjoined, Defendant will proceed with the voter removals in violation of Section 5 of the Voting Rights Act.

64. Accordingly, Plaintiffs are entitled to a declaratory judgment that Defendant's implementation of the new voter purge procedures violates Section 5 of the Voting Rights Act, and to an injunction prohibiting the implementation of the new voter purge procedures and restoring the legally enforceable *status quo ante* unless and until Section 5 preclearance has been obtained from the United States Department of Justice or the United States District Court for the District of Columbia.

## REQUEST FOR DECLARATORY RELIEF

65. Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2201, Plaintiffs seek a declaration that Defendant's implementation and use of the new voter purge procedures absent preclearance by the Department of Justice or the United States District Court for the District of Columbia violates the right of Plaintiffs as secured by the Voting Rights Act.

## BASIS FOR EQUITABLE RELIEF

66. Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means of securing adequate redress from Defendant's unlawful practices. Plaintiffs will continue to suffer irreparable injury from Defendant's acts, policies and practices set forth herein unless Defendant is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court enter Judgment granting Plaintiffs:

A. A declaratory judgment that Defendant's actions violate the rights of Plaintiffs as secured by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.

B. Injunctive relief enjoining Defendant, his successors in office, agents, employees, attorneys and those persons acting in concert with him or at his direction from using and

implementing the new voter purge procedures, and ordering Defendant to cease using information generated by matching with DHSMV data and/or the SAVE system for voter registration list maintenance purposes without Section 5 preclearance.

C.  Engage in affirmative, corrective measures, including but not limited to sending letters rescinding its previous correspondence to county Supervisors of Elections relating to the new voter purge procedures, advising the Supervisors of Elections that the distributed lists should not be used for any purpose, and to report immediately to the Court any county that refuses to comply;

D.  An order of this Court retaining jurisdiction over this matter until the Defendant has complied with all the orders and mandates of the Court;

E.  The costs of this suit, including reasonable attorneys' fees; and,

F.  Such other and further relief as the Court may deem just and proper.

DATED: July 27, 2012

Respectfully submitted,

/s/ Edward Soto
WEIL, GOTSHAL & MANGES LLP
Edward Soto
Florida Bar No. 0265144
Edward McCarthy
Florida Bar No. 683701
1395 Brickell Avenue, Suite 1200
Miami, Florida
Tel: (305) 577-3100
Edward.soto@weil.com
Edward.mccarthy@weil.com

/s/ Robert A. Kengle
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
Robert A. Kengle
Dara Lindenbaum
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
(202) 662-8324
bkengle@lawyerscommittee.org
dlindenbaum@lawyerscommittee.org


/s/ Randall C. Marshall
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF FLORIDA, INC.
Randall C. Marshall
Florida Bar No. 181765
Julie Ebenstein
Florida Bar No. 91033
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137-3227
Tel. 786-363-2700
Fax 786-363-1108
rmarshall@aclufl.org
jebenstein@aclufl.org


/s/ M. Laughlin McDonald
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
M. Laughlin McDonald
230 Peachtree Street, NW, Suite 1440
Atlanta, GA 30303
(404) 523-2721
lmcdonald@aclu.org
koconnor@aclu.org

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

/s/ *Edward Soto*
Edward Soto (Fla. Bar No. 0265144)
edward.soto@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Ave, Suite 1200
Miami, FL 33131
(305) 577-3100

**Attorneys for Plaintiffs Mi Familia Vota Education Fund; Murat Limage; and Pamela Gomez**