UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MI FAMILIA VOTA EDUCATION FUND, as an organization; MURAT LIMAGE; PAMELA GOMEZ,<br><br>　　　Plaintiffs.<br><br>　　v.<br><br>KEN DETZNER, in his official capacity as Florida Secretary of State,<br><br>　　　Defendant. | CIVIL ACTION<br>CASE NO. 8:12-CV-1294-T-27MAP<br><br>Three Judge Court Requested |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Murat Limage, Pamela Gomez, and Mi Familia Vota Education Fund (together, "Plaintiffs") brought this action against Defendant Ken Detzner ("Defendant" or "Secretary"), who in his official capacity as Florida Secretary of State failed to obtain preclearance under Section 5 of the Voting Rights Act (the "Act") before instituting new practices and procedures to identify and then remove voters from registration lists in Florida's covered counties. Defendant Detzner moved to dismiss based on three arguments. First, he claims he is not the proper party "because the State is not a covered jurisdiction" under the Voting Rights Act. *See* Motion to Dismiss (ECF No. 25, the "Motion") at 1. The argument misses the mark. Defendant Detzner is the proper party because he developed the new voter purge procedures, he maintains control of

1

the relevant information and decision-making, and he is the appropriate state election official to submit the new voter procedures for preclearance on behalf of the covered counties.

Second, Defendant Detzner argues that the new voting procedures are not subject to Section 5 preclearance. He is wrong. Section 5 prohibits <u>any</u> change in voting practices or procedures in Florida's five covered counties. Here, starting in April 2012, Defendant began a process and sought to implement a series of sweeping revisions to the manner in which covered counties remove and threaten to remove registered voters from the voter rolls. These new practices differ from any procedure previously in force and effect and have culminated in the most recent instructions from the Defendant to the covered counties: registered voters will be identified and removed from the voter rolls based on a list generated by comparing the Florida Department of Highway Safety and Motor Vehicles ("<u>DHSMV</u>") database and the Florida Voter Registration System ("<u>FVRS</u>") database with names on the Systematic Alien Verification for Entitlements ("<u>SAVE</u>") database. Section 5 protects Plaintiffs' rights by requiring that the Defendant obtain prior approval before implementing these wholesale changes in the way covered counties eliminate registered voters from the voting rolls.

Third, and finally, Defendant mistakenly argues that Plaintiffs improperly seek a statewide injunction, yet as the Amended Complaint makes clear, Plaintiffs seek an injunction in the covered counties only. The Motion should therefore be denied because substantial authority supports the sufficiency of Plaintiffs' claims, and given the gravity of the right to vote in the upcoming elections, Plaintiffs should be afforded an opportunity to proceed to discovery and develop additional facts to support their claims.

2

## **LEGAL STANDARD**

Defendant Detzner has moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6), "for failure to state a claim upon which relief can be granted." Mot. at 1 (ECF No. 25). In ruling on such a motion, the Court "must . . . accept all factual allegations in the complaint as true." Tellabs, Inc. v. Makor Issues & Rights, LTD, 551 U.S. 308, 322 (2007). Accord, Erickson v. Pardus, 551 U.S. 89, 90 (2007); Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993); Zinerman v. Burch, 494 U.S. 113, 118 (1990); Davis v. Monroe County Bd. of Education, 526 U.S. 629, 633 (1999) ("we must assume the truth of the material facts as alleged in the complaint"). The Court must not only take the factual allegations in the complaint as true, but must "construe them in the light most favorable to the plaintiffs." Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("it is well established that, in passing on a motion to dismiss . . . for failure to state a cause of action, the allegations in the complaint should be construed favorably to the pleader."). A court must also consider "documents incorporated into the complaint by references, and matters of which a court may take judicial notice." Tellabs, Inc., 551 U.S. at 322.

Congress enacted the Voting Rights Act of 1965 to eliminate the "insidious and pervasive evil of racial discrimination in voting." South Carolina v. Katzenbach, 383 U.S. 301, 309 (1966). Section 5 of the Act "automatically suspends the operation of voting regulations . . . and furnishes mechanisms for enforcing the suspension." Katzenbach, 383 U.S. at 334. This

3

suspension occurs "pending scrutiny by federal authorities to determine whether their use would violate the Fifteenth Amendment." Id. at 334.

Section 5 of the Act "prohibits the enforcement of any change in voting practices or procedures in certain states and other covered jurisdictions, including five of Florida's counties, unless and until the change is approved by the Attorney General of the United States or by a three-judge panel of the United States District Court for the District of Columbia." Florida v. Holder, 1:11-cv-01428, at 2 (D.D.C. Aug. 16, 2012); 42 U.S.C. § 1973c(a). Five Florida counties – Hillsborough, Monroe, Collier, Hendry, and Hardee – became subject to coverage under Section 5. See 28 C.F.R. Pt. 51, App.; see also 41 Fed. Reg. 34329 (Aug. 13, 1976); 40 Fed. Reg. 43746 (Sept. 23, 1975).

The United States and/or private plaintiffs can bring coverage actions to enjoin enforcement of uncleared changes. See 42 U.S.C. § 1973a(b). These coverage questions are heard by three-judge federal district courts in jurisdictions covered by Section 5. Such courts may only consider coverage questions, to determine "whether a particular state enactment is subject to the provisions of the Voting Rights Act, and therefore must be submitted for approval before enforcement." Allen v. State Board of Elections, 393 U.S. 544, 559-60 (1969). The Supreme Court has repeatedly held that there are three issues to be decided in a coverage action: "whether Section 5 covers a contested change, whether Section 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." Lopez I, 519 U.S. at 23; see also McCain v. Lybrand, 465 U.S. 236, 251 n. 17

4

(1984); City of Lockhart v. United States, 460 U.S. 125, 129 n.3 (1983). This three-part test must be applied in this Section 5 enforcement action.

Voter registration list maintenance programs are required to be submitted for Section 5 review. See Morales v. Handel, 1:08-CV-3172, 21-22 (N.D. Ga. Oct 27, 2008) (holding that Georgia's comparison of information between two databases that results in the identification of applicants whose eligibility cannot be verified constitutes a change and must be submitted for preclearance). The United States correctly described the governing legal standard with respect to the controlling issues in this case: "The State of Florida has adopted a new database matching program that results in registered voters being removed from the voter rolls. This new practice has not been submitted for administrative or judicial preclearance pursuant to Section 5 of the Voting Rights Act, and despite a lack of preclearance, the change has been implemented in Florida's covered counties subject to Section 5." Statement of Interest, at 1 (ECF No. 22). Florida has previously submitted voting changes related to its implementation of voter registration list maintenance procedures, however, none of these previous submissions included the procedures at issue in this case. See id. at 6-7 (ECF No. 22).

## ARGUMENT

As Plaintiffs alleged in their First Amended Complaint (ECF No. 20), Defendant Detzner, in his official capacity as Florida Secretary of State, has failed to obtain Section 5 preclearance before implementing, and causing to be implemented, certain changes in standards, practices, and procedures in Florida affecting voting in the five covered counties. Defendant began a process through which he implemented a series of procedures for conducting voter

5

registration list maintenance that differ from the State's benchmark procedures previously in force and effect. These voter list maintenance procedures are directly related to voting and the ability to cast a counted ballot.

Specifically, the Defendant has put a series of new procedures into effect for conducting voter registration list maintenance activities, including but not limited to, matching a list generated by the DHSMV database and the FVRS database with names on the United States Citizenship and Immigration Service's SAVE database, and checking the eligibility of "potential non-citizens" in order to initiate a process which will result in the removal of registered voters and the threatened removal of registered voters from the voting rolls. The Defendant has implemented these changes without seeking preclearance despite the requirement that "**any** voting qualification or prerequisite to voting or standard, practice or procedure with respect to voting" in a covered jurisdiction be submitted for preclearance. 42 U.S.C. 1973c(a) (emphasis added); Presley v. Etowah County Comm'n, 502 U.S. 491, 501 (1992).

Removing voters from the registration rolls, which makes them ineligible to cast a meaningful ballot, "bears a direct relation to voting itself" and is a change "in the composition of the electorate." Presley, 502 U.S. at 510, 502-03. These factual allegations, which must be taken as true and construed in the light most favorable to the Plaintiffs, clearly state a claim under Section 5 of the Act upon which relief can be granted.

I. **Defendant Detzner, The Secretary of State, is the Proper Defendant**

Defendant argues that "Section 5 does not provide a cause of action against the State" because only five counties and not the State are covered jurisdictions under Section 5. Mot. at 3

(emphasis in original). Plaintiffs, however, are not suing the State of Florida but the Secretary of State in his official capacity. The Supreme Court has recognized that in partially covered states, "[section] 5's preclearance requirement applies to a covered county's nondiscretionary efforts to implement a voting change required by state law, notwithstanding the fact that the State is not itself a covered jurisdiction." Lopez v. Monterey County, 525 U.S. 266, 282 (1999) (Lopez II). Further, in Bone Shirt v. Hazeltine, 200 F.Supp.2d 1150, 1156 (D. S.D. 2002), the three-judge panel found that "when Congress used the words 'shall enact or seek to administer,' Congress intended that either the legislative body that enacted the legislation or the executive body that was responsible for administering the legislation would be responsible for obtaining preclearance"), aff'd, 461 F.3d 1011 (8th Cir. 2006) (emphasis added).

Pursuant to Fla. Stat. § 97.012, the Secretary of State is the chief election officer of Florida, and as such, is responsible for the administration of state laws affecting voting, and for assuring that elections in the State are conducted in accordance with the law. The Secretary of State is required to provide written direction and opinions to the Supervisors of Elections on the performance of their official duties, Fla. Stat. § 97.012(16), and is required by state law to maintain "accurate and current voter registration records." Fla. Stat. § 98.075(1). Similarly, the Help America Vote Act (HAVA) requires the "chief State election official" – and not counties – to maintain a computerized statewide list of every voter in the state and to ensure that "only voters who are not registered or who are not eligible to vote are removed from the computerized list." 42 U.S.C. § 15483(a). The National Voter Registration Act ("NVRA") also places the responsibility on the states – not the counties – to maintain "an accurate and current voter

7

registration roll for elections for Federal office" through the use of uniform and non-discriminatory programs and activities in compliance with the Voting Rights Act. 42 U.S.C. § 1973gg-6(b). Further, Defendant Detzner is the state official responsible for seeking preclearance under Section 5 of the Act of any changes affecting voting practices or procedures. Given that state and federal law confer the Secretary with the authority to maintain a comprehensive statewide list of voters, enact new voting procedures, and seek preclearance of changes in voting practices or procedures, the Secretary is the proper Defendant.[1]

Defendant further contends that a Section 5 claim only runs against the supervisors in the covered counties because they implement any changes to the notice-and-hearing procedure. Mot. at 14. A similar argument was rejected by the court in Janis v. Nelson, 2009 WL 5216902 (D. S.D. Dec. 30, 2009). Janis was an action to enforce Section 5 and other federal laws, in which the plaintiffs challenged the purging of voters from a county voter registration list. The secretary of state and other state level defendants argued, as Defendant Detzner does here, that they were not proper parties because list maintenance was performed by county officials. The court denied the motion to dismiss on the grounds that the state defendants were proper parties "because they are authorized to promulgate rules pertaining to numerous voting matters, including the uniformity of election procedures, voter file maintenance, and implementation of the NVRA." Id. at *7. In reaching its conclusion, the court relied upon Chisom v. Roemer, 501 U.S. 380, 403 (1991), which held that the Voting Rights Act "should be interpreted in a manner that provides 'the greatest possible scope' in combating racial discrimination."

---

[1] The State has authority to submit any voting change on behalf of its covered jurisdictions and political subunits. See 28 C.F.R. 51.23(a).

8

In this case, Defendants recognize this responsibility, admitting that it is the "Secretary's statutory duty to verify voter eligibility and to maintain the voter registration list." Mot. at 20. The Secretary exercised his discretion and initiated the new data matching procedure, he "distributed a small sample consisting of roughly 2,600 such names to county supervisors," and he directed them to contact the identified individuals to verify citizenship. Mot. at 7. And it is the Secretary who now has access to the SAVE database and "intends to verify the citizenship status of the individuals identified as potential non-citizens . . . ." Mot. at 8-9. Thus, it was the Secretary and not the county supervisors of elections in the covered counties that developed the list maintenance practices and procedures. In light of his duty to promulgate and implement voting policies and procedures, as well as his implementation of a change in the procedure for conducting voter registration list maintenance, Defendant Detzner is a proper party to this litigation.

## II. Defendant is Implementing a Change in Voting Covered by Section 5

Defendant Detzner also argues that Section 5 preclearance does not apply to the Secretary's use of "more current and reliable sources" to purge voter registration lists. *See* Mot.at 4, 15. But the proposed new list maintenance activities are the exact type of change that requires preclearance.[2] In Young v. Fordice, 520 U.S. 273 (1997), the Court held that changes made by a state to comply with the NVRA, which was designed to upgrade voter registration for federal elections, were subject to preclearance under Section 5. The Court, citing its prior

---

[2] See Morales v. Handel, 1:08-CV-3172, at 21-22 (N.D. Ga. Oct. 27, 2008) (holding that a state's "comparison of information [between two] databases that results in the identification of applicants whose eligibility could not be verified" constitutes a voting change and must be submitted for Section 5 review).

9

decisions, noted that "minor, as well as major, changes require preclearance." Id. at 284. The Court further held that: "Nor does it matter for the preclearance requirement whether the change works in favor of, works against, or is neutral in its impact upon the ability of minorities to vote. . . .It is the change that invokes the preclearance *process*; evaluation of that change concerns the *merits* of whether the change should in fact be precleared." Id. at 285. Preclearance "is a process aimed at preserving the status quo until the Attorney General or the courts have an opportunity to evaluate a proposed change." Id. Whether Defendant Detzner believes the changes involve implementing "more current and reliable sources" (Mot. at 4) does not exempt them from preclearance under Section 5. The changes have a direct impact on "the manner of voting" and "the composition of the electorate," and are thus subject to preclearance under Section 5. Presley, 502 U.S. at 502-03.[3]

Defendant Detzner relies upon Lopez v. City of Houston, 2009 WL 1456487 (S.D. Tex. 2009), aff'd, 617 F.3d 336 (5th Cir. 2010), for the proposition that the changes at issue in this case are not subject to Section 5 preclearance. Mot. at 17-18. But Defendant fails to note that the plaintiffs' claims in Lopez were dismissed as not justiciable because they were "moot and not ripe." 617 F.3d at 340. Where a claim is moot, any "judgment below should not be permitted to stand." United States v. Hamburg-Amerikanische Packet-Fahrt-Actien, 239 U.S. 466, 478 (1916). See also Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992); Firefighter's Local 1784 v. Stotts, 467 U.S. 561, 571 (1984); Spencer v. Kemna, 523 U.S. 1, 18

---

[3] Indeed, unlike Presley where the Court held that the changes affecting "the allocation of power among government officials" did not fall within the factual scenarios triggering Section 5 preclearance, the Defendant's new purge procedures "bear a direct relation to voting" and is a change "in the composition of the electorate." Presley, 502 U.S. at 502-503, 510.

(1998) ("mootness…simply deprives us of our power to act"). Lopez, because of its mootness, has no precedential value and cannot support Defendant Detzner's claim. But even if it were not moot, the district court in Lopez held that: "Because the plaintiffs have failed to allege a baseline standard or practice that was actually in effect different from the alleged 'new' standard or practice, they have failed to state a claim under 5 of the VRA." 2009 WL 1456487 *8. Here, as the United States correctly presented to the Court, Plaintiffs have stated a baseline practice that was in effect different from the new standard or practice, and have thus stated a claim under Section 5. See Statement of Interest at 6-9 (ECF No. 22).[4]

Florida's benchmark precleared procedures relate to the removal of deceased persons, duplicate registrations, felony convictions, and adjudications of mental incapacity and enable the Department of State and Supervisors of Elections to receive information from sources that were not expressly identified in the statute to determine other bases of ineligibility, including citizenship. See Fla. Stat. § 98.075(1)-(6); Submission No. 2005-2390. The precleared provisions did *not* identify new citizenship database verification procedures. The procedures for the administration of Section 5 of the Voting Rights Act, 28 C.F.R. § 51.15, states that even if legislation that enables or permits the state to institute a voting change has been precleared, the state is "not exempt from the preclearance requirement . . . unless that implementation is explicitly included and prescribed in the submission of such parent legislation." Upon preclearing amendments to Fla Stat. § 98.075 in 2005, the Department of Justice specifically

---

[4] Defendant's second argument under Lopez also fails. Here, Defendant is not simply "merely changing the information relied upon" to comply with the governing statutes. Mot. at 19. Instead, Defendant is implementing new citizenship database verification procedures that were never precleared in the first instance.

11

noted that the precleared change was "enabling in nature[] . . . [t]herefore, the State of Florida is not relieved of its responsibility to seek Section 5 review of any changes affecting voting proposed to be implemented pursuant to this legislation." Statement of Interest, pg. 7 (ECF No. 22). Therefore, the state's new voter registration list maintenance activities – which were not explicitly included and prescribed in the state's previous preclearance submissions – have not been and must be precleared.

### III. Plaintiffs are Not Seeking a Statewide Injunction

Defendant claims that Plaintiffs are seeking "a statewide injunction based on an alleged Section 5 violation that exists . . . in only five of Florida's 67 counties." Mot. at 1. To the contrary, as the complaint makes clear, Plaintiffs' Section 5 claim is limited to the five covered counties. First Amended Complaint, ¶ 62 (ECF No. 20). Plaintiffs do not seek a statewide injunction, but an injunction against enforcement of the changes in the covered counties.

### CONCLUSION

For the above and foregoing reasons, Plaintiffs submit that Defendant's motion to dismiss should be denied.

Respectfully submitted,

/s/ Edward Soto
WEIL, GOTSHAL & MANGES LLP
Edward Soto
Florida Bar No. 0265144
Edward McCarthy
Florida Bar No. 683701
1395 Brickell Avenue, Suite 1200
Miami, Florida
Tel: (305) 577-3100
edward.soto@weil.com

12

edward.mccarthy@weil.com


/s/ Robert A. Kengle
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
Robert A. Kengle
Dara Lindenbaum
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
(202) 662-8324
bkengle@lawyerscommittee.org
dlindenbaum@lawyerscommittee.org


/s/ Randall C. Marshall
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA, INC.
Randall C. Marshall
Florida Bar No. 181765
Julie Ebenstein
Florida Bar No. 91033
4500 Biscayne Blvd., Suite 340
Miami, Florida 33137-3227
Tel. 786-363-2700
Fax 786-363-1108
rmarshall@aclufl.org
jebenstein@aclufl.org


/s/ M. Laughlin McDonald
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
M. Laughlin McDonald
230 Peachtree Street, NW, Suite 1440
Atlanta, GA  30303
(404) 523-2721
lmcdonald@aclu.org

## CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on September 4, 2012, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

              /s/ Edward Soto
              Edward Soto (Fla. Bar No. 0265144)
              edward.soto@weil.com
              WEIL, GOTSHAL & MANGES LLP
              1395 Brickell Ave, Suite 1200
              Miami, FL 33131
              (305) 577-3100

              *Attorneys for Plaintiffs Mi Familia Vota*
              *Education Fund, Murat Limage, and*
              *Pamela Gomez*