## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**MI FAMILIA VOTA EDUCATION FUND,**
**as an organization, MURAT LIMAGE,**
**and PAMELA GOMEZ,**

        **Plaintiffs,**

v.

                              **CASE NO:  8:12-cv-1294-T-27MAP**

                              **Three Judge Court (CRW, JDW, JSM)**

**KEN DETZNER, in his official capacity**
**as Florida Secretary of State,**

        **Defendant.**

_____/

## ORDER

**BEFORE THE COURT**[1] is the Secretary's Motion to Dismiss First Amended Complaint (Dkt. 25).  Defendant Ken Detzner, in his official capacity, moves to dismiss the First Amended Complaint on the ground that it fails to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure.  Plaintiffs oppose the motion to dismiss (Dkt. 27).  The United States has also filed a Statement of Interest (Dkt. 22) and a Supplemental Statement of Interest opposing the motion to dismiss (Dkt. 26).   For the reasons set forth below, the Secretary's Motion to Dismiss First Amended Complaint (Dkt. 25) is due to be denied.

## Applicable Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give

---

[1] This Court has properly been convened as a three-judge court under 28 U.S.C. § 2284 and 42 U.S.C. § 1973c.

the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint need not include detailed factual allegations, it must contain sufficient factual allegations, which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). A well-pleaded complaint, however, may survive a motion to dismiss even if it appears "that recovery is very remote and unlikely." *Bell Atlantic Corp.*, 550 U.S. at 555 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

While the Court must accept all factual allegations as true in evaluating a motion to dismiss under Rule 12(b)(6), the tenet does not apply to legal conclusions. *Ashcroft*, 556 U.S. at 677-78. Similarly, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### Introduction

Plaintiffs allege that Defendant failed to obtain preclearance under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (the **"Voting Rights Act"**), before implementing certain changes in standards, practices, and procedures affecting voting in five counties covered by the Voting Rights Act. *See* First Amended Complaint (Dkt. 20), ¶ 2. Plaintiffs seek declaratory and

injunctive relief prohibiting Defendant from continuing to implement the alleged changes unless and until Defendant obtains Section 5 preclearance from the United States District Court for the District of Columbia or the United States Attorney General. *See id.* at ¶ 3.

The only question before the Court on the pending motion to dismiss whether the Complaint contains sufficient allegations to state a claim upon which relief may be granted. In ruling on the motion to dismiss, the Court is not adjudicating the underlying merit of Plaintiffs' claims. As discussed below, while a substantial question exists whether Defendant has implemented a change subject to preclearance under the Voting Rights Act, the allegations in the Complaint are sufficient to survive a motion to dismiss.

## Background

On June 6, 2012, Mi Familia Education Fund, Murat Limage, and Pamela Gomez (collectively, "**Plaintiffs**"), filed this action against Ken Detzner, as Florida Secretary of State ("**Defendant**"). Plaintiff Murat Limage is of Hatian descent. First Amended Complaint (Dkt. 20), ¶ 14. Plaintiff Pamela Gomez is of Hispanic, specifically, Dominican descent. *Id.* at ¶ 15. Both Limage and Gomez are residents of Hillsborough County, Florida, citizens of the United States, and are legally registered to vote in Florida. *Id.* at ¶¶ 14-15. Although legally registered and entitled to vote in Florida, Limage and Gomez assert that they are concerned that they will not be permitted to vote in the upcoming election due to actions taken by Defendant in an attempt to remove unauthorized voters from voter registration lists. *See id.* at ¶¶ 56, 59.

Plaintiff Mi Familia Education Fund ("**Mi Familia**") is a national, non-profit organization dedicated to working with the Latino community to increase civic participation through increased voter registration and voting by eligible Latino citizens. *Id.* at ¶ 16. Mi Familia contends that

Defendant's recent efforts to remove unauthorized voters from voter registration lists will interfere with its efforts to register eligible voters and force it to divert resources from its regular activities. *Id.* at ¶¶ 16, 60.

### The Database Matching Program

In the Spring of 2012, the Florida Division of Elections (the "**Division**") announced its intention to use a database-matching program to develop lists of registered voters that it classified as suspected non-citizens and to furnish the lists to individual Supervisors of Elections with the directive that they attempt to contact the individuals identified by the Division and, if appropriate, remove them from the voter rolls (the "**Database Matching Program**"). *See, e.g., id.* at ¶¶ 25, 32. Plaintiffs allege that prior to the creation of the Database Matching Program, Florida had no legally-enforceable procedure for systematically instituting voter registration list maintenance procedures against individual registered voters based on citizenship information maintained by the Florida Department of Highway Safety and Motor Vehicles ("**DHSMV**"). *Id.* at ¶ 24.

The Division originally generated its lists of suspected non-citizens by comparing information maintained by the DHSMV with the Florida Voter Registration System ("**FVRS**") database. *Id.* at ¶ 2. Specifically, the Division compared the list of individuals registered to vote in the FVRS database to the list of individuals identified as non-citizens in the DHSMV database. *See id.* at ¶ 25. Plaintiffs contend that this procedure was flawed in numerous respects and produced lists that erroneously targeted lawfully-registered voters, including a disproportionate share of racial and language minorities. *Id.* at ¶¶ 35-36.[2] For example, Plaintiffs note that the DHSMV database failed

---

[2] This Court lacks the authority to consider whether the Database Matching Program does or does not have a discriminatory purpose or effect. *See Perkins v. Matthews*, 400 U.S. 379, 385 (1971) ("What is foreclosed to such district court is what Congress expressly reserved for consideration by the District Court for the District of Columbia

to take into account situations when an individual became a naturalized United States citizen after obtaining a Florida drivers' license. *Id.* at 23. The Division recently revised the Database Matching Program to include new information available via the United States Citizenship and Immigration Service's Systematic Alien Verification for Entitlements ("**SAVE**") database. *See, e.g., id.* at ¶¶ 2, 45.[3]

### *Florida and the Voting Rights Act*

The Voting Rights Act "was designed by Congress to banish the blight of racial discrimination in voting, which ha[d] infected the electoral process in parts of our country for nearly a century." *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966). Five Florida counties – Hillsborough, Monroe, Collier, Hendry, and Hardee – are covered jurisdictions under Section 5 of the Voting Rights Act. *See* 28 C.F.R. Pt. 51, App.; *see also* 41 Fed. Reg. 34329 (Aug. 13, 1976); 40 Fed. Reg. 43746 (Sept. 23, 1975). "Section 5 requires covered jurisdictions to obtain what has come to be known as 'preclearance' from the District Court for the District of Columbia or the DOJ before 'enact[ing] or seek[ing] to administer' any alteration of their practices or procedures affecting voting." *Riley v. Kennedy*, 553 U.S. 406, 412 (2008). There is no dispute that Defendant did not

---

or the Attorney General-the determination whether a covered change does or does not have the purpose or effect 'of denying or abridging the right to vote on account of race or color.'"). The goal of a three-judge district court facing a § 5 challenge must be to ensure that the covered jurisdiction submits its election plan to the appropriate federal authorities for preclearance as expeditiously as possible." *Lopez v. Monterey County, Cal.*, 519 U.S. 9, 23 (1996) (*Lopez I*). Thus, the only issues before the Court are whether Section 5 covers the Database Matching Program, whether Section 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate. *Id.* at 24.

[3] Defendant originally sent a list of 2,600 potential non-citizens to county Supervisors of Elections during May 9, 2012. *Id.* at ¶ 32. After concerns arose regarding the accuracy of the information contained in this initial list, Defendant indicated that on or before June 27, 2012, Florida had temporarily ceased furnishing Supervisors of Elections with lists of suspected non-citizens. *Id.* at ¶ 40. The Division recently indicated its intention to resume the Database Matching Program after the Department of Homeland Security informed Florida that it would provide access to the SAVE database. *See id.* at ¶¶ 43, 45

submit the Database Matching Program for preclearance under Section 5 of the Voting Rights Act. *See* 28 C.F.R. §§ 51.26-51.28.

## Contentions

Defendant argues that dismissal is warranted because (1) the State of Florida is not a covered jurisdiction under Section 5 of the Voting Rights Act, (2) Plaintiffs have failed to identify any change in voting practice or procedure subject to Section 5 preclearance, and (3) Plaintiffs seek to bootstrap a statewide injunction based on an alleged Section 5 violation that exists in only five of Florida's 67 counties. Plaintiffs respond that the motion to dismiss should be denied because substantial authority supports their claims and they should be afforded an opportunity to conduct discovery in support of those claims.

### *Covered Jurisdiction*

Defendant argues that the State of Florida is not a covered jurisdiction under Section 5 of the Voting Rights Act. In response, Plaintiffs argue that Defendant is the proper party because he developed the new voter purge procedures at issue, he maintains control over the relevant information and decision-making, and he is the appropriate state election official to submit the new voter procedures for preclearance on behalf of the covered counties.

The Supreme Court has recognized that in states only partially covered by Section 5, "§ 5's preclearance requirement applies to a covered county's nondiscretionary efforts to implement a voting change required by state law, notwithstanding the fact that the State is not itself a covered jurisdiction." *Lopez v. Monterey County*, 525 U.S. 266, 282 (1999) (*Lopez II*). Morever, "[a] State, whether partially or fully covered, has authority to submit any voting change on behalf of its covered jurisdictions and political subunits." 28 C.F.R. § 51.23. At least one district court has recognized

6

that "Congress intended that either the legislative body that enacted the legislation or the executive body that was responsible for administering the legislation would be responsible for obtaining preclearance." *Bone Shirt v. Hazeltine*, 200 F.Supp. 2d 1150, 1156 (D. S.D. 2002)

Under the facts alleged in this case, Secretary Detzner is an appropriate defendant for a Section 5 enforcement action because his office adopted and is responsible for administrating the Database Matching Program. *See Bone Shirt*, 200 F.Supp. 2d at 1156 (holding that "[u]nder the plain meaning of the Voting Rights Act, the State of South Dakota is an entity that must secure preclearance from the Attorney General or bring a declaratory judgment action" for review of a law passed by the state legislature that impacts voting in covered counties); *see also Haith v. Martin*, 618 F.Supp. 410 (D. N.C. 1985) (enforcement action brought against governor, attorney general, secretary of state, and board of elections); *Clayton v. North Carolina Bd. of Elections*, 317 F.Supp. 915, 919 (E.D. N.C. 1970) (enjoining, in covered counties, an unprecleared state law in a partially covered state in a case filed against state actors). In fact, it cannot reasonably be disputed that it is Defendant that has all of the information regarding the development of the Database Matching Program and the manner by which the lists of suspect voters were generated. As a result, the Defendant is the proper party to explain the purpose and effect of voting changes he implemented. *See* 28 C.F.R. § 51.23 (noting that a "State is better able to explain to the Attorney General the purpose and effect of voting changes it enacts than are the individual covered jurisdictions").[4]

---

[4] As the United States notes, Florida recently filed an action in the District Court of the District of Columbia seeking Section 5 preclearance with respect to other voting changes, *see Florida v. United States*, No. 11-1428, 2012 WL 3538298 (D. D.C. 2012), and that "[i]t would be highly unusual for Florida to be the appropriate plaintiff to bring a Section 5 lawsuit seeking judicial preclearance but not be an appropriate defendant for a Section 5 enforcement action."

### *Change in Voting Practice or Procedure*

Defendant also argues that Plaintiffs have failed to identify any change in voting practice or procedure subject to Section 5 preclearance. Specifically, Defendant argues that the use of a new source of information to confirm voter eligibility (*e.g.*, the DHSMV or SAVE databases) is not a change subject to preclearance because it is not a change to an existing standard, practice, or procedure. Plaintiffs counter that the changes to the manner in which covered counties remove and threaten to remove registered voters from the voter rolls represent a change in voting practices or procedures.

Section 5 provides that "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" is subject to "preclearance" in covered jurisdictions. 42 U.S.C. § 1973c. The Supreme Court has repeatedly held that the phrase "standard, practice, or procedure" must be given the "broadest possible scope" in order to effectuate the articulated purposes of the Voting Rights Act. *Allen v. State Board of Elections*, 393 U.S. 544, 567 (1978); *accord Dougherty County, Georgia, Board of Educ. v. White*, 439 U.S. 32, 38 (1978).

Covered changes are changes that bear a direct relation to voting, including changes "in the composition of the electorate that may vote for candidates for a given office." *Presley v. Etowah County Comm'n*, 502 U.S. 491, 502-03, 510 (1993). Even minor changes require preclearance. *Young v. Fordice*, 520 U.S. 273, 284 (1997). "In order to determine whether an election practice constitutes a 'change' as that term is defined in ... § 5," a court must "compare the practice with the covered jurisdiction's 'baseline.'" *Riley v. Kennedy*, 553 U.S. 406, 421 (2008). The "baseline" is "the most recent practice that was both precleared and 'in force or effect' – or, absent any change since the jurisdictions coverage date, the practice that was 'in force or effect' on that date." *Id.* "The

8

question is whether the [covered jurisdiction] has enacted or is seeking to administer a practice or procedure that is different enough from the baseline to qualify as a change." *Id.*

Defendant contends that the fact that Supervisors of Elections are now provided with information on citizenship that is derived from a different source than previous information "does not remotely 'change' either the citizenship 'qualification' or the long-standing 'practice' of inquiring into a registered voter's citizenship status when there is reason to do so." Motion to Dismiss First Amended Complaint (Dkt. 25), p. 15. However, Plaintiffs argue that prior to 2012, the State of Florida did not use the DHSMV or SAVE databases to identify suspected non-citizens in connection with its efforts to maintain voter registration rolls. *See Morales v. Handel*, 1:08-CV-3172, 21-22 (N.D. Ga. Oct. 27, 2008) (concluding that Georgia's use of driver's license and social security databases to verify voter citizenship constituted a change from baseline practices or procedures requiring preclearance under Section 5).

Defendant also argues that the Florida laws requiring the maintenance of accurate voting registrations, requiring the removal of ineligible voters from voter rolls, and allowing the Secretary to access information from state and federal officials in order to identify ineligible voters have all been precleared under Section 5. As a result, Defendant contends that construing the Database Matching Program as a "change" in voting practice, procedure, or qualification would require the Secretary to obtain preclearance any time he obtained information bearing on voter eligibility from a new source (*e.g.,* a new government database, a newspaper article or internet report, or a tip from a private citizen). Defendant further argues that such an interpretation would directly contravene the

Secretary's precleared authorization to act on any "information ... that a registered voter is ineligible because he or she is not a United States citizen." Fla. Stat. § 98.705(6).[5]

An administrative effort to comply with a statute that has already received clearance may require separate preclearance because Section 5 reaches informal as well as formal changes. *See Foreman v. Dallas County, Tex.*, 521 U.S. 979, 980-81 (1997) (*per curiam*) (quoting *NAACP v. Hampton County Election Commission*, 470 U.S. 166, 178 (1985)).[6] Similarly, changes made in an effort to comply with federal law require preclearance when those changes reflect policy choices made by state or local officials. *Young*, 520 U.S. at 284. Thus, Plaintiffs argue, the mere fact that Defendant has implemented the Database Matching Program in an effort to comply with state or federal law does not necessarily exclude the program from Section 5's preclearance requirement. *See Young*, 520 U.S. at 285 ("Insofar as [new administrative practices] embody discretionary decisions that have a potential for discriminatory impact, they are appropriate matters for review under § 5's preclearance process.").

Defendant also argues that the Database Matching Program is not a change to the "baseline" practice in any covered county because the covered counties have not changed the qualifications for voter eligibility or the notice-and-hearing procedure for removing an ineligible individual from the voter registration list. Plaintiffs respond that this argument ignores the practical effect of the Database Matching Program, which was developed and implemented by Defendant. *See Janie v.*

---

[5] Florida has submitted other changes related to its implementation of voter registration list maintenance procedures involving the use of database matching for preclearance under Section 5. *See* Submission No. 2005-2390 (Dkt. 22, Ex. 1); Submission No. 2011-2197 (Dkt. 22, Ex. 2).

[6] The Department of Justice specifically noted, in preclearing the statutory provisions relied on by Defendant, that those provisions were enabling in nature and, therefore, Florida was not relieved of its responsibility to seek preclearance of any changes affecting voting proposed to be implemented or adopted pursuant to those provisions. *See* Statement of Interest (Dkt. 26), Ex. 1d & Ex. 2d.

*Nelson*, No. CR. 09-5019-KES, 2009 WL 5216902, at *7 (D. S.D. Dec. 30, 2009) (concluding that state representatives were proper defendants in action brought under the Voting Rights Act when they were authorized to promulgate rules relating to voting matters and voter file maintenance even though county auditor was individual responsible for removal of voter from list of registered voters).

While a substantial question exists as to whether the use of new data sources in connection with a finite number of prospective voters constitutes a "change" to voting practices or procedures subject to Section 5 preclearance, this issue is best resolved on summary judgment rather than on a motion to dismiss. For purposes of surviving a motion to dismiss, when all factual allegations are taken as true and construed in the light most favorable to Plaintiffs, Plaintiffs have adequately pled that the Database Matching Program constitutes a change to "any voting qualification or prerequisite to voting or standard, practice or procedure with respect to voting" subject to preclearance under Section 5 of the Voting Rights Act. *See* 42 U.S.C. §1973c(a); *see also Allen*, 393 U.S. 544, 567 (1978) ("Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way."). This result is also consistent with the general rule that any doubt as to whether "changes" are covered by Section 5 should be resolved in favor of the Attorney General's construction of the Voting Rights Act. *See United States v. Sheffield Board of Commissioners*, 435 U.S. 110, 131 (1978).

### *Scope of Injunctive Relief*

Defendant's final argument is that Plaintiffs seek to bootstrap a statewide injunction based on an alleged Section 5 violation that exists in only five of Florida's 67 counties. Plaintiffs concede in their response to the motion to dismiss, however, that they only seek an injunctive relief with respect to the five counties covered by Section 5 of the Voting Rights Act.

11

### Conclusion

The First Amended Complaint contains factual allegations sufficient to provide Defendant with fair notice of Plaintiffs' claims and those allegations, when taken as true, state a claim to relief that is plausible on its face. *See Ashcroft*, 556 U.S. at 677-78; *Bell Atlantic Corp.*, 550 U.S. at 555-56. While the allegations in the First Amended Complaint are sufficient to state a claim against Defendant, this Order is not, nor is it intended to be, a comment or decision on the merits of Plaintiffs' claim.

Accordingly, it is **ORDERED AND ADJUDGED** that the Secretary's Motion to Dismiss First Amended Complaint (Dkt. 25) is **DENIED**.

**DONE AND ORDERED** this _17_ᵗʰ day of September, 2012.

          **JAMES D. WHITTEMORE**
          United States District Judge
          Middle District of Florida

          **CHARLES R. WILSON**
          United States Circuit Judge
          Eleventh Circuit Court of Appeals

          **JAMES S. MOODY**
          United States District Judge
          Middle District of Florida

Copies to:
The Honorable Charles R. Wilson
The Honorable James S. Moody
Counsel of Record